IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GREGORY JOHN MILO,

           Petitioner,

v.                                                              Case No. 17-3154-JWB

DAN SCHNURR, Warden,
El Dorado Correction Facility, and
KANSAS ATTORNEY GENERAL,

           Respondents.

**MEMORANDUM AND ORDER**

This case comes before the court on Petitioner's amended application for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 15.) The matter has been fully briefed and is ripe for decision. (Docs. 30, 33.) The court has reviewed those portions of the state court record which are pertinent to the issues raised in the amended application and finds that an evidentiary hearing is not warranted. Petitioner's amended application is DENIED for reasons set forth herein.

Petitioner was convicted of attempted first degree murder, aggravated robbery and attempted aggravated robbery following a nolo contendere plea in state court and sentenced to 272 months in prison. In a federal habeas proceeding, the state court's factual findings are presumed correct and petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here, Petitioner does not challenge the state court's findings. Accordingly, the court incorporates the Kansas Court of Appeal's version of the facts:

> On July 21, 2011, Milo pled no contest to one count of attempted first-degree murder, one count of aggravated robbery, and one count of attempted aggravated robbery. In return, the State dismissed additional charges of aggravated kidnapping, attempted aggravated robbery, aggravated battery, possession of a firearm by a felon, and possession of marijuana with intent to distribute. The State also agreed to request the mid-box sentence for attempted first-degree murder and request that the sentences run concurrently.

1

Milo was represented by David Magariel. At the plea hearing, Milo informed the district court that he was 22 years old, he had graduated high school, he was not under the influence of alcohol or drugs, he understood the crimes with which he had been charged, he had time to consult with Magariel about the charges and his plea, Magariel had explained the penalties for the crimes, Magariel had answered all of his questions, and he was satisfied with Magariel's services.

The district court advised Milo that depending on his criminal history score his potential sentences would be as follows: (1) a minimum of 147 months' imprisonment and a maximum of 653 months' imprisonment for attempted first-degree murder; (2) a minimum 55 months' imprisonment and a maximum of 247 months' imprisonment for aggravated robbery; and (3) a minimum of 31 months' imprisonment and a maximum of 136 months' imprisonment for attempted aggravated robbery. Milo told the court that he understood the possible sentences.

Milo confirmed that he signed the plea agreement, he understood that the agreement was only a recommendation that was not binding on the district court, he understood the court could impose any penalty allowed by the law, and he understood all the rights he was forfeiting through his no contest plea. At the State's request, the district court took judicial notice of the testimony from the preliminary hearing. The district court confirmed that Milo was present at the preliminary hearing, understood the court would use the facts from that hearing to determine if there was sufficient evidence to support his plea, and understood that, if a sufficient factual basis for the plea existed, the plea would be accepted and he would be found guilty and sentenced as if he had pled guilty.

The district court reiterated that although Milo was not admitting guilt, he would be found guilty if he pled no contest and there was a sufficient factual basis for the charges. Magariel informed the district court that he was satisfied that there was sufficient evidence to support the charges. Finally, Milo told the district court that he was entering the no contest plea voluntarily and of his free will and had not been threatened or made any promises outside of what was contained in the plea agreement. The district court accepted Milo's no contest plea.

Milo's presentence investigation (PSI) report indicated that his criminal history score was "C." This score was based on Milo's past criminal history of: (1) two nonperson felony convictions of forgery from Missouri; (2) a nonperson misdemeanor conviction for giving false information to an officer from Missouri; and (3) a juvenile adjudication for first-degree robbery, a person felony, from Missouri. On August 30, 2011, Milo, through Magariel, filed an objection to the PSI report, arguing that his juvenile adjudication for first-degree robbery was not a proper conviction under Kansas law and must be stricken from his criminal history calculation. After the removal of this adjudication, Milo claimed his criminal history score should be "F."

On August 31, 2011, Milo filed a pro se motion to withdraw his no contest plea. In his motion, Milo argued: (1) Magariel had told him the plea agreement was for a 214–month

sentence; (2) his plea was based off of his criminal history score being "F" rather than "C;" (3) Magariel had told him that a plea of no contest meant that the district court could find him not guilty; (4) there was insufficient evidence to support his conviction of attempted first-degree murder; and (5) his aggravated robbery and attempted aggravated robbery convictions were multiplicitous.

At a hearing on September 1, 2011, Magariel informed the district court that Milo needed a new appointed attorney because his pro se motion alleged that Magariel had "advised him inappropriately as to some legal matters in the case." The district court agreed and allowed Magariel to withdraw. The district court subsequently appointed Zane Todd to represent Milo.

On November 1, 2011, the State filed a response to Milo's motion to withdraw his plea. The State acknowledged that all parties believed that Milo would have a criminal score of "F." However, the State argued that this did not result in Milo's plea not being knowing or voluntary because Milo had been advised of the maximum and minimum penalties for his offenses and because Milo had been advised that the court was not bound by the plea agreement. The State also argued that Magariel's alleged statement to Milo that he could be found not guilty if there was not a sufficient factual basis for his no contest plea did not provide good cause to withdraw his plea. Finally, the State noted that, while Milo does not specifically argue ineffective assistance of counsel, "his arguments, taken cumulatively, could be seen as such. Therefore, an analysis of the effectiveness of Mr. Magariel must be taken into account."

On November 9, 2011, the district court held a hearing on Milo's motion to withdraw his plea. Milo testified that he believed a no contest plea meant that the court could still find him not guilty based on the evidence and he believed there was a high probability that he would be found not guilty because there was no evidence. Milo also testified that he informed Magariel that he had a prior adult forgery conviction and a prior juvenile conviction of first-degree robbery. According to Milo, Magariel said he would be in the "F" box and receive a sentence of 214 months' imprisonment.

Magariel also testified at the hearing. As to Milo's criminal history, Magariel testified Milo told him that he had a prior forgery conviction in Jackson County, Missouri. Magariel testified that he consulted with the State about Milo's criminal history because "it was a higher level case." Magariel testified that it appeared from the NCIC that Milo had a second forgery conviction and misdemeanors with unknown dispositions. Magariel also called Milo's Missouri public defender and confirmed that the only convictions he was aware of were Milo's two forgery convictions. Magariel testified that Milo never informed him that he had a juvenile robbery adjudication. Had Milo informed him of this adjudication, Magariel testified that he would have advised him he would have a criminal history score of "C."

Magariel also testified that he told Milo that a no contest plea did not require him to admit guilt, but he was not contesting the facts of the case. Magariel also informed Milo that the State would provide a factual basis for the plea and the judge would determine if that basis

was sufficient to find him guilty. Magariel testified that he told Milo that it was possible for the judge to find him not guilty, "but that that was extremely unlikely, and that for all intents and purposes, he would be found guilty."

Magariel also testified that he went over the plea form with Milo line by line to ensure that he understood it thoroughly. Magariel informed Milo that (1) it was a mid-box plea; (2) he thought his criminal history score was "F," which would result in a sentence of 214 months' imprisonment; (3) the plea called for the sentences for the counts to run concurrently; (4) the court did not necessarily have to follow the plea agreement, but he had reason to believe it would; and (5) the maximum sentencing exposure if Milo went to trial was a lot greater. Magariel testified that during their conversation Milo asked him, "Can you assure me I'm going to get 214 months?" Magariel responded, "As long as your only criminal history is those two prior forgeries, that's what you will get."

After hearing the evidence, the district court made a ruling from the bench. The district court utilized the Edgar factors to determine whether there was good cause to allow Milo to withdraw his plea. *See State v. Edgar*, 281 Kan. 30, 36–38, 127 P.3d 986 (2006). First, the district court evaluated whether Milo was represented by competent counsel. The district court noted Magariel's lengthy experience as a public defender. The district court also found that Magariel's testimony showed he had made "more than due diligent inquiries into [Milo's] criminal history." Specifically, the district court cited Magariel's testimony that (1) he asked Milo what his criminal history was; (2) he called Milo's Missouri public defender to inquire about Milo's convictions; (3) he inquired with the State as to what convictions Milo had on the NCIC; and (4) he was knowledgeable of the impact of juvenile adjudications on a defendant's criminal history score. For these reasons, the district court found that Magariel provided Milo with competent counsel.

Next, the district court found that there was no evidence that Magariel mistreated, coerced, or took unfair advantage of Milo. The district court then turned to whether Magariel intentionally or unintentionally misled Milo about his criminal history score. The district court found that it did not believe that Milo had informed Magariel of his juvenile adjudication for first-degree robbery, perhaps because Milo hoped the adjudication would not be discovered. The district court cited Milo's prior crimes of dishonesty and Magariel's knowledge of the impact of a felony adjudication on Milo's criminal history score as reasons for not believing Milo's testimony. The district court found that Milo was not misled in anyway by Magariel regarding his plea. Rather, the district court concluded that Milo failed to provide full information to Magariel.

The district court also found that Milo was fully informed of the potential sentences he could receive and that the court was not bound by the plea agreement. The district court also found that Milo was aware that he could be found guilty or not guilty when he entered a no contest plea and Magariel had informed him that it was extremely unlikely the court would not accept the factual basis for the plea. The district court found that the plea was fairly and voluntarily entered into and understandingly made. For these reasons, the district court concluded that there was not reasonable grounds or good cause to withdraw the plea and denied Milo's motion.

The district court held a sentencing hearing on December 15, 2011. At the hearing, the district court denied Milo's objection to the inclusion of his juvenile adjudication for first-degree robbery in his criminal history score and found that he had a criminal history score of "C." The district court sentenced Milo to: (1) 272 months' imprisonment for his conviction of attempted first-degree murder; (2) 59 months' imprisonment for his conviction of aggravated robbery; and (3) 32 months' imprisonment for his conviction of attempted aggravated robbery. The district court ordered the sentences were ordered to run concurrently giving Milo a controlling sentence of 272 months' imprisonment.

Milo appealed the denial of his motion to withdraw his plea, and this court issued an opinion on October 4, 2013. *State v. Milo*, No. 108,228, 2013 WL 5507288 (Kan. App. 2013) (unpublished opinion), *rev. denied* 300 Kan. 1106 (2014). This court held that the district court was correct when it found that Magariel provided competent counsel and made diligent inquiries into Milo's criminal history. 2013 WL 5507288, at *4. The court also held that there was no evidence of coercion, mistreatment, or unfair advantage. 2013 WL 5507288, at *4. This court determined that the district court properly applied the *Edgar* factors and did not abuse its discretion when it denied Milo's motion to withdraw his plea. 2013 WL 5507288, at *5. Further, this court concurred that there was no reasonable grounds or good cause to permit Milo to withdraw his plea on the basis that he believed he would be found not guilty if he entered a plea of no contest. 2013 WL 5507288, at *5. Finally, this court also rejected Milo's claim that using his prior convictions to calculate his criminal history score violated his rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). 2013 WL 5507288, at *5. For these reasons, this court affirmed the district court's denial of Milo's motion to withdraw his plea. 2013 WL 5507288, at *6.

On August 20, 2015, Milo filed a motion to withdraw his plea after sentencing under K.S.A. 2015 Supp. 22–3210. Milo raised the following claims in his motion: (1) Magariel was constitutionally ineffective for failing to make a record of the presumptions regarding Milo's criminal history that formed the basis for the plea agreement; (2) Magariel was constitutionally ineffective for failing to adequately and reasonably investigate Milo's criminal history score prior to Milo entering the no contest plea; (3) Magariel was constitutionally ineffective for failing to competently explain to Milo his rights to withdraw a no contest plea; and (4) his appellate counsel was constitutionally ineffective for failing to argue that the district court applied an incorrect legal standard in denying the presentence motion to withdraw plea.

The State filed a response to Milo's motion on August 25, 2015. The State argued that Milo's motion was barred by res judicata because Milo had appealed on the issue of ineffective assistance of counsel and had received an adverse ruling. The State requested that the district court summarily deny Milo's motion.

The district court ruled on Milo's motion on October 28, 2015. The district court noted that Milo previously had filed a motion to withdraw his plea, which had received an evidentiary hearing, a final judgment on the merits, and had been affirmed on direct appeal. The district

court found that Milo's current motion sought a second or successive hearing on his motion to withdraw his plea and raised the same cause of action, involved the same parties, and sought the same relief. For these reasons, the district court found that res judicata precluded Milo from litigating a second motion to withdraw his plea and denied his motion. Milo timely filed a notice of appeal.

*State v. Milo*, No. 114,832, 384 P.3d 1033, 2016 WL 7178341 at *1-4 (Kan. Ct. App. 2016), *review denied* (July 25, 2017) ("*Milo II*").

The Kansas Court of Appeals affirmed Petitioner's conviction on direct appeal. *State v. Milo*, No. 108,228, 310 P.3d 1078, 2013 WL 5507288 (Kan. Ct. App. 2014) ("*Milo I*"). The Kansas Supreme Court denied review on August 28, 2014. Petitioner then sought post-conviction relief under K.S.A. 60-1507 and K.S.A. 22-3210. The state district court denied his petitions and the Kansas Court of Appeals affirmed. *See Milo II*; *State v. Milo*, No. 115,584, 386 P.3d 525, 2016 WL 7179123 (Kan. Ct. App. 2016) ("*Milo III*"). The Kansas Supreme Court denied review on both motions on July 25, 2017.

## I. Analysis

This court's ability to consider collateral attacks on state criminal proceedings is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the highly deferential standard contained in AEDPA, if Petitioner's claim has been decided on the merits in state court, this court may only grant relief under two circumstances: 1) if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or 2) if the state court decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2).

> A state court decision is "contrary to" Supreme Court precedent in two circumstances: (1) when "the state court applies a rule that contradicts the governing law set forth in [the

Court's] cases"; or (2) when "the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from" that reached by the Court. *Williams v. Taylor*, 529 U.S. 362, 406, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court decision constitutes an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S. Ct. 1495. Thus, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S. Ct. 1495; *see also Thomas v. Gibson*, 218 F.3d 1213, 1219-20 (10th Cir. 2000) (discussing *Williams*).

*Hamilton v. Mullin*, 436 F.3d 1181, 1186 (10th Cir. 2006).

This court will only consider alleged violations of federal law in reviewing Petitioner's application. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80 (1991). Moreover, the federal questions must ordinarily have been first presented to the state courts to be considered. *Picard v. Connor*, 404 U.S. 270, 277-78, 92 S. Ct. 509, 513 (1971); *but see* 28 U.S.C. § 2254(b)(2) (permitting denial on the merits, despite failure to exhaust state remedies).

Petitioner's application states four grounds for relief related to ineffective assistance of counsel. Petitioner's application raises three grounds of ineffective trial counsel: 1) failing to investigate Petitioner's criminal history; 2) failing to make a record regarding Petitioner's criminal history during the plea hearing and 3) failing to adequately inform Petitioner of his rights under the plea agreement. Petitioner's final ground for relief is ineffective appellate counsel on the basis that appellate counsel failed to raise an issue on appeal.

A claim of ineffective assistance of counsel in violation of the Sixth Amendment[1] requires petitioner to show that 1) his counsel's performance fell below an objective standard of

---

[1] Although Petitioner's application references "Due Process" on each ground, Petitioner's reference to Due Process does not change the standard of this court's review under *Strickland* as Petitioner makes no allegations in his asserted grounds for review that would implicate a standard other than the one required by *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

7

reasonableness; and 2) but for his counsel's unreasonable errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Williams v. Taylor*, 529 U.S. 362, 390-91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "These two prongs may be addressed in any order, and failure to satisfy either is dispositive." *Grant v. Royal*, 886 F.3d 874, 903 (10th Cir. 2018).

In evaluating the performance of counsel, the Supreme Court provided the following:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.
>
> . . .
>
> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 689-90, 104 S. Ct. at 2065-66 (internal citations omitted).

The Supreme Court has held that the *Strickland* test is "applicable to ineffective-assistance claims arising out of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

In reviewing the decisions by the state court in *Milo I* and *Milo II* as to Petitioner's claims of ineffective assistance of trial counsel, it is difficult to determine which allegations were

8

reviewed on the merits and which claims were denied on procedural grounds. *See Milo II*, 2016 WL 7178341;. *Milo I*, 2013 WL 5507288. The Tenth Circuit has held that a court may proceed directly to a merits review where analysis of an issue on the merits is more efficient than addressing the level of deference owed or issues of procedural bar. *See Smith v. Mullin*, 379 F.3d 919, 927 (10th Cir. 2004) ("We need not determine the level of deference owed the [state court's] conclusions as to these various misconduct claims or which [claims] are barred on independent and adequate state grounds. Where an issue may be more easily and succinctly affirmed on the merits, judicial economy counsels in favor of such a disposition.") (internal citations omitted). The court finds that it is more efficient to conduct an analysis of Petitioner's claims of ineffective assistance of trial counsel on the merits. With respect to the claim for ineffective assistance of appellate counsel, the Kansas Court of Appeals reviewed this claim on the merits and applied the *Strickland* standard. *See Milo II*, 2016 WL 7178341 at *7. That decision is entitled to deference.

Because the trial court conducted an evidentiary hearing on the issues relating directly to trial counsel's performance when considering Petitioner's motion to set aside his plea agreement, the court finds that an evidentiary hearing is not warranted. Petitioner has not identified what testimony would be presented at a hearing nor has he raised any issue which may be addressed that was not already covered in the evidentiary hearing held by the state trial court. *See Davis v. Workman*, 695 F.3d 1060, 1076-77 (10th Cir. 2012) ("We have said that district courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim.")

### A. Failure to Investigate Petitioner's Criminal History

Petitioner contends that his trial counsel was ineffective for failing to "adequately and reasonably investigate Milo's criminal history score prior to Milo's no-contest plea. There is a

reasonable [sic] Milo would have insisted on going to trial if this was done." (Doc. 15 at 7.) At no point, however, does Petitioner identify what more trial counsel should have done to investigate his criminal history and locate a juvenile adjudication. The facts surrounding Petitioner's guilty plea, including trial counsel's investigation of Petitioner's criminal history score, were detailed in *Milo II*. Trial counsel asked Petitioner about his criminal history and was informed that he had a prior forgery conviction in Jackson County. Trial counsel reviewed the NCIC report and it showed two forgery convictions and misdemeanors with unknown disposition. Trial counsel then called Petitioner's Missouri public defender who confirmed that he was only aware of the two forgery convictions. Trial counsel testified that Petitioner never informed him of a juvenile robbery adjudication; otherwise, trial counsel would have informed Petitioner that he would have a criminal history score of "C" instead of "F." *Milo II*, 2016 WL 7178341 at *2. Trial counsel informed Petitioner that he thought his criminal history score was an "F," and as long as his criminal history only consisted of the two forgeries, Petitioner would likely receive a sentence of 214 months. *Id.* at *3.

Although the Kansas Court of Appeals did not consider trial counsel's performance under *Strickland*, the court's review on direct appeal determined that trial counsel's performance was competent and that he "made more than due diligent inquiries into Milo's criminal history." *Id.* at *3. Under *Strickland*, the court must apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." 466 U.S. at 689. "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Id.*

Although the Supreme Court has yet to address under what circumstances an attorney may be deficient under *Strickland* due to erroneous sentencing calculations, the Tenth Circuit has

repeatedly held that "a miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance arising to the level of ineffective assistance of counsel." *United States v. Parker*, 720 F.3d 781, 787 n. 9 (10th Cir. 2013) (quoting *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993)). In *United States v. Rhodes*, the Tenth Circuit held that a failure to investigate did not fall short of *Strickland's* standard. 913 F.2d 839, 844 (10th Cir. 1990). "The reasonableness of an attorney's decision not to conduct an investigation is directly related to the information the defendant has supplied." *Id.* "A claim of ineffective assistance of counsel cannot be charged when the essential and foundational information required to trigger such an investigation is withheld from the defendant's attorney by the defendant himself." *Id.* Such is the case here, where Petitioner essentially argues that his counsel was constitutionally deficient for failing to uncover the juvenile conviction that Petitioner hid from him.

Upon learning that Petitioner's criminal history was more than the one forgery charge which was disclosed to trial counsel by Petitioner, trial counsel then investigated by reviewing the NCIC and contacting Petitioner's prior defense counsel in Missouri. Given the fact that trial counsel conducted inquiries into Petitioner's criminal history and reasonably relied on the NCIC report, the court finds that trial counsel's conduct was objectively reasonable and in good faith. *See Gardner v. McKune*, 242 F. App'x 594, 597–98 (10th Cir. 2007) (reasonable for attorney to rely on criminal history report and not perform independent investigation). Petitioner has failed to "overcome the presumption that trial counsel rendered reasonable professional assistance" and the court finds that trial counsel's conduct "does not rise to the level of ineffective assistance of counsel." *Hooks v. Roberts*, No. 09-3090-JWL, 2009 WL 3855682, at *12 (D. Kan. Nov. 17, 2009) (failing to uncover juvenile conviction was not deficient performance under *Strickland*).

Moreover, Petitioner cannot establish prejudice. In the context of a guilty plea, this requires Petitioner to "show that he would not have pled guilty had his attorney performed in a constitutionally adequate manner." *Gardner*, 242 F. App'x at 597. Petitioner's application makes the conclusory statement that Petitioner would have gone to trial if he had known that his criminal history category was a "C." Prior to accepting his plea, the trial court conducted a thorough colloquy. In that colloquy, Petitioner stated that he understood that the trial court could sentence him to a minimum of 147 months and a maximum of 653 months. At no point did Petitioner state that he had been guaranteed a sentence of 214 months. Rather, Petitioner stated that he was not made any promise outside of the plea agreement and understood that the trial court could impose any penalty allowed under law. *Milo II*, 2016 WL 7178341 at *2.

Petitioner was fully advised by the trial court that he could be sentenced in a range that included the sentence he actually received. Petitioner stated that he understood that he could be sentenced up to 653 months and proceeded to enter his plea. Because Petitioner was aware that he could receive a sentence greater than he actually did, Petitioner cannot establish that he would not have pled guilty had he known that his criminal history was a category "C." *United States v. Gordon*, 4 F.3d 1567, 1570-71 (10th Cir. 1993); *Gardner*, 242 F. App'x at 597–98.

Therefore, Petitioner's application for relief on this ground is denied.

## B. Failing to Make a Record of Petitioner's Criminal History at the Plea Hearing

Petitioner also contends that his trial counsel was ineffective for failing to make a record of his criminal history during the plea hearing. The "proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003). The court has already determined that counsel's performance in investigating Petitioner's criminal history was reasonable and did not

rise to the level of ineffective assistance. Petitioner now asserts that trial counsel was ineffective for "failing to make a record regarding Milo's criminal history, which formed the basis of Milo's plea agreement with the state. The court of appeals of Kansas and the Supreme Court of Kansas REVERSE decisions when a proper record of the presumptions are [not] made." (Doc. 15 at 6.)

First, this court does not reexamine state-court determinations on questions of state law. *See Gardner*, 242 F. App'x at 597-98. Rather, the court is "bound by a state court's interpretation of its own law." *Id.* (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Therefore, Petitioner's argument that Kansas state law would require a reversal for failing to make a record of presumptions is not appropriate for review.

Petitioner wholly fails to cite to any federal authority which requires a record of a criminal defendant's criminal history to be made during a plea hearing. The court finds there is no such requirement under federal law. Moreover, although Petitioner claims that his criminal history was a factor in his plea agreement, the plea agreement itself does not confirm this statement. Rather, the plea agreement was for a mid-box plea, but the actual box was not included in the plea agreement. Although all parties believed that Petitioner's criminal history was a category "F," the plea agreement does not contain any pertinent terms regarding Petitioner's criminal history category.

As federal law does not require a record of a defendant's criminal history to be made at the plea hearing and the record does not support a finding that Petitioner's criminal history category was a term of the plea agreement, trial counsel was not ineffective for failing to make a record at

13

the plea hearing. Moreover, Petitioner cannot establish prejudice under *Strickland* for the reasons discussed above.

Petitioner's application for relief on this ground is accordingly denied.

**C. Failing to Adequately Inform Petitioner of His Rights Under the Plea Agreement**

Petitioner asserts that trial counsel was ineffective for failing to "competently explain Milo's rights to withdraw his no-contest plea." (Doc. 15 at 9.) Petitioner does not expand the basis for this ground. The court reviewed Petitioner's appellate brief to determine Petitioner's argument in state court on this issue.[2] Petitioner asserted that trial counsel failed to investigate the criminal history score, explain how an investigation may uncover additional convictions, explain that Petitioner could not withdraw the plea if a more serious criminal history was determined and failed to explain that Petitioner would be permitted to withdraw his plea if there had been a record of his criminal history at the plea hearing which later contradicted his actual criminal history. (Case No. 16-115584, Brief of App. at 23.) Petitioner's brief further argued that Petitioner was prejudiced by these failures because Petitioner would have rejected a plea that resulted in a 272-month sentence. (*Id.* at 24.)

Petitioner's arguments do not rise to the level of ineffective counsel. The court has already determined that trial counsel's investigation was reasonable and that trial counsel was not required to create a record of Petitioner's criminal history at the plea hearing. With respect to trial counsel's advice regarding criminal history, trial counsel informed Petitioner that his sentence would be 214 months, as long as his criminal history only included the two felony forgeries. Moreover, trial counsel sent Petitioner a letter regarding the significance of his criminal history:

> Additionally, the matter of your possible sentence will undoubtedly arise during our future contact, discussions, and planning of your case. Any possible sentence will be computed

---

[2] An argument not presented to the state court would be waived on federal habeas review. *See Grant v. Royal*, 886 F.3d 874, 891 (10th Cir. 2018).

14

> largely upon the nature of any crime you might be convicted of, and **your prior criminal history**. I cannot over-emphasize the importance of your prior criminal record in considering the outcome of your case.
>
> You are in a better position than anyone to know your prior criminal history. You should, therefore, begin immediately considering your prior record so that you can accurately and fully inform me of it. Although we will do what we can to determine the nature and extent of your record, it is your responsibility to see that I am accurately informed about it, so that I can advise you about your case. Without this information I cannot fully advise you as to any possible sentence.

(Pet'r's K.S.A. 22-3210 Mot., Exh. B) (emphasis in original).

The trial court also fully advised Petitioner of the rights that he was giving up by pleading guilty. Those rights included the right to go to trial, the right to remain silent, right to confront witnesses, right to testify and the right to appeal. Petitioner stated that he understood those rights. At no time did Petitioner state that he understood that his plea agreement was conditioned on a specific sentence. Rather, Petitioner understood that he could be sentenced up to 653 months in prison. *Milo II*, 2016 WL 7178341 at *1. The trial court also ensured that Petitioner was satisfied with trial counsel's services and that trial counsel had answered all of his questions. The trial court determined that Petitioner voluntarily entered the no contest plea. (Plea Hrg. Tr. At 6-7.) The record clearly demonstrates that the trial judge "undertook a constitutionally sufficient inquiry to ensure the voluntariness of Petitioner's no contest plea." *Miles v. Dorsey*, 61 F.3d 1459, 1472 (10th Cir. 1995). Moreover, trial counsel testified that he went through Petitioner's plea agreement with Petitioner line by line. *Milo II*, 2016 WL 7178341 at *3.

Based on the facts presented, the court finds that Petitioner was fully advised of the consequences of entering a no contest plea and the implication of his criminal history on his sentence. Therefore, Petitioner has not established that trial counsel's performance fell below an objective standard of reasonableness. Further, Petitioner's allegation of prejudice is not sufficient. Petitioner claims that he would not have pled guilty if he had known that he could be sentenced to

272 months. This is an insufficient allegation of prejudice in light of Petitioner's statement to the trial court that he understood he could be sentenced up to 653 months. *See Gordon*, 4 F.3d at 1570-71; *Gardner*, 242 F. App'x at 597–98.

Petitioner's application for relief on this ground is denied.

### D. Ineffective Appellate Counsel for Failing to Raise an Issue

Finally, Petitioner contends that appellate counsel was ineffective for "failing to draw the court of appeals of Kansas' attention to the fact that the trial court applied an incorrect legal standard, which is an abuse of discretion. The appellate court would likely have reversed if that was done." (Doc. 15 at 10.) Petitioner fails to identify the incorrect legal standard. The court will presume that Petitioner is referring to his argument raised in state court that the trial court incorrectly "shifted the burden to Milo to understand and report his criminal history." *Milo II*, 2016 WL 7178341 at *7.

On review, the Kansas Court of Appeals rejected this claim.

> The problem with Milo's argument is that this court considered this issue on direct appeal even though the issue was not specifically raised by Milo's appellate counsel. In upholding the denial of Milo's presentence motion to withdraw his plea, this court stated:
>
>> "The district court correctly found that Milo was represented by competent counsel who made diligent inquiries into Milo's criminal history. There is also a lack of any evidence of coercion, mistreatment, or unfair advantage. The court found Milo was not misled, Milo's testimony that he told Magariel about the juvenile robbery adjudication was not credible, and perhaps Milo hoped it would not be discovered. The court concluded that Milo did not disclose full information about his criminal past, which prevented Magariel from providing proper advice. Milo certainly did not have a duty to disclose his criminal history. *See State v. Garcia*, 295 Kan. 53, 67, 283 P.3d 165 (2012) (Rosen, J., concurring) ('It has never been the duty or obligation of a criminal defendant to provide his or her criminal history.'). However, we can take Milo's failure to disclose a known conviction into consideration when contemplating a mutual mistake under the Edgar factors.
>>
>> "Most importantly, the district court considered the circumstances giving rise to the mutual mistake when the court essentially found that Milo was the only person who realistically could have known about his juvenile record. This consideration

> affected each of the Edgar factors because it indicated that counsel was competent, the State did not mislead or take advantage of Milo, and the plea was fairly and understandingly made." *Milo*, 2013 WL 5507288, at *4–5.
>
> The district court did not improperly shift the burden to Milo to report his criminal history score.

*Milo II*, 2016 WL 7178341 at *7.

Because the state court considered and rejected the same argument on appeal, Petitioner cannot establish prejudice on the basis that appellate counsel failed to raise the argument. Therefore, the court finds that the state court's conclusion on this issue was neither contrary to, nor an unreasonable application of, *Strickland*.

Petitioner's application for relief on this ground is denied.

## II. Conclusion

Petitioner's amended application for habeas corpus (Doc. 15) is DENIED.

**IT IS SO ORDERED** this 24th day of August, 2018.

>     s/ John W. Broomes
> JOHN W. BROOMES
> UNITED STATES DISTRICT JUDGE